**UTICA ALLOYS, INC. Plaintiff,**

v.

**ALCOA INC., Defendant.**

**No. 5:02–CV–972.**

United States District Court,
N.D. New York.

April 1, 2004.

Cohen & Cohen LLP, Utica NY (Daniel S. Cohen of counsel), for plaintiff.

Leboeuf, Lamb, Green & Macrae, Pittsburgh, PA (Brian P. Cuthbertson, John C. Cleary, of oounsel), Mackenzie Hughes LLP, Syracuse, NY (Peter D. Carmen, of Counsel), for defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. BACKGROUND

The facts of this case were adequately set forth in *Utica Alloys, Inc. v. Alcoa Inc.*, 303 F.Supp.2d 247, available at 2004 WL 226157 (N.D.N.Y. Jan.28, 2004), and will not be repeated here.

In the Memorandum–Decision and Order, summary judgment was granted in favor of defendant Alcoa Inc. ("Alcoa") on its breach of contract counterclaim, and against plaintiff Utica Alloys' ("Utica Alloys"), the *quantum meruit* and unjust enrichment claims of which were dismissed. (Docket No. 32.) In the decision, it was held that Alcoa's measure of damages would be the difference, calculated for each of February, March, and April of 2002, between the per pound purchase agreement price of the scrap shipped by Alcoa and received by Utica Alloys, and the fair market value of unprocessed scrap. The parties were directed to submit materials relevant to the following three inquiries: (1) the amount, in pounds, of scrap shipped by Alcoa and received by Utica Alloys in each of the three months;

(2) the per pound purchase agreement price for the scrap shipped and received in each of the three months; and (3) the fair market value of unprocessed scrap during each of the three months. On February 24, 2004, Alcoa submitted its verified application for damages, along with exhibits. (Docket No. 33.) On March 18, 2004, Utica Alloys submitted written opposition, along with exhibits, to such application. (Docket No. 34.)

## II. DISCUSSION

### A. Amount of Scrap Shipped During Operative Months

■ The parties do not appear to dispute the amount of scrap shipped by Alcoa and received by Utica Alloys in each of February, March, and April of 2002. In February of 2002, Alcoa shipped and Utica Alloys received 147,797 pounds of scrap turnings and 7,019 pounds of scrap solids. In March of 2002, Alcoa shipped and Utica Alloys received 68,705 pounds of scrap turnings. Finally, in April of 2002, Alcoa shipped and Utica Alloys received 211,041 pounds of scrap turnings.

Alcoa, however, is also demanding damages for "123,480 pounds of scrap turnings, generated in April 2002, that it held and allegedly did not ship to Utica [Alloys] due to Utica[ ] [Alloys'] failure to pay contract terms." (Docket No. 33, ¶ 4.) This demand is rejected. Alcoa has submitted no evidence that Utica Alloys was aware of this scrap, neither during April nor during this litigation. Utica Alloys will not be penalized for that decision.

Furthermore, under the purchase agreement, Utica Alloys has the option of inspecting shipped scrap upon receipt for "non-conformance," the finding of which would result in a discount of the purchase agreement price. (Docket No. 34, Purchase Agreement, attached.) Alcoa has submitted no evidence of the unshipped scrap's chemistries, to enable a determination by Utica Alloys as to its conformity. Any damages award for the unshipped scrap, aside from undercutting the basis of Alcoa's breach of contract claim—that it continued to operate under the purchase agreement, which required it to ship all scrap to Utica Alloys—would be entirely speculative and unduly punitive to Utica Alloys.

### B. Per Pound Purchase Agreement Price During Operative Months

The parties also do not appear to dispute the monthly per pound purchase agreement price for the scrap Alcoa shipped and Utica Alloys received. With respect to the scrap shipped and received in February, the agreement price was $1.538 per pound for the scrap turnings, and $1.688 per pound for the scrap solids. With respect to the scrap turnings shipped and received in March, the agreement price was $1.535 per pound. With respect to the scrap turnings shipped and received in April, the agreement price was $1.630 per pound.

### C. Fair Market Value of Unprocessed Scrap During Operative Months

■ One area in which the parties do not agree is the fair market value of unprocessed scrap during each of February, March, and April of 2002. Alcoa purports to derive such value from two e-mails, dated March 12, 2002, and April 30, 2002, sent by Utica Alloys Vice President Anthony Marino ("Marino") to Alcoa representative Douglas O'Leary ("O'Leary"), in which Marino offered to pay Alcoa $0.91 and $1.03, respectively, per pound of scrap. According to Alcoa, therefore, the fair market value for unprocessed scrap in February and March was $0.91 per pound, and $1.03 per pound in April. (Docket No. 33, ¶¶ 5, 7.)

■ Utica Alloys, on the other hand, purports to derive the fair market value of unprocessed scrap for the three months from, essentially, three separate sales of processed scrap that occurred in April and May of 2002. Specifically, it points out that all the scrap shipped and received during February, March, and April was eventually sold in May to high bidder Keywell, L.L.C. ("Keywell"), for $1.17 per pound, a price that Utica Alloys contends "is conclusive as to the floor of [the fair market] [v]alue." (Docket No. 34, ¶ 3A.) However, because like it Keywell was a " 'middle man,' not an 'end user' "—i.e., Keywell processes scrap and determines it chemistries before reselling it to an end user—Utica Alloys argues that even the $1.17 per pound price is insufficient to determine fair market value of unprocessed scrap. *Id.* at ¶ 3C. Instead, according to Utica Alloys, the fair market value of unprocessed scrap should be determined from a May of 2002 sale of processed scrap by Utica Alloys to an end user, Crucible Specialty Metals ("Crucible"), in which the purchase price was $1.26 per pound. *Id.* It also notes that it sold processed scrap to Crucible in April of 2002 at $1.21 per pound. *Id.*

The arguments of both parties are rejected. With respect to the e-mails from Marino to O'Leary, it is initially pointed out that the two companies were in negotiations to save the purchase agreement. It is surmised that in such negotiations, the parties are less concerned with pinpointing the fairest price and more concerned with salvaging the business relationship. This is especially so in light of Alcoa's superior bargaining position, which it held because Utica Alloys stated it could not pay in accordance with the valid purchase agreement entered into between the two companies.

Moreover, the May of 2002 sales of processed scrap to Keywell and Crucible cannot be used to determine fair market value. The Memorandum–Decision and Order, as noted, instructed the parties to submit materials demonstrating the fair market value of unprocessed scrap for each of the three months individually. Both sales occurred in May, and are therefore one, two, and three months removed from April, March, and February of 2002. Therefore, as with Marino's e-mails, these sales are not the best indicators of the fair market value of unprocessed scrap during each of the three months.[1]

■ It is readily apparent that the parties have failed to submit the most relevant documentation that would allow the court to determine the fair market value of unprocessed scrap during the second, third, and fourth months of 2002. Such documentation would, in a best-case scenario, be comprised of records of sales of unprocessed scrap during February, March, and April of 2002, whether such sales were by Alcoa or another similar entity selling a similar product. What we have instead are negotiation e-mails and May of 2002 sales of processed scrap.

■ All is not completely lost, however, as Utica Alloys did submit evidence of one sale, albeit of processed scrap, that occurred during April of 2002, one of the three months for which fair market value of unprocessed scrap is actually in need of determination. Thus, for April of 2002, discounting the $0.15 per pound estimate

---

1. That Keywell purchased the actual scrap that was shipped and received during the three months is irrelevant, as this component of the damages equation is intentionally designed to provide a comparison that is wholly independent of the purchase agreement obligations, and any actions of the parties taken pursuant thereto. In other words, this component asks what would have happened had no purchase agreement been in effect.

that Utica Alloys places, and Alcoa does not seem to dispute, on processing services, the fair market value of unprocessed scrap is $1.06 per pound. Admittedly, this methodology for determining the fair market value is less than perfect—as the April of 2002 sale was for processed scrap, and any intricacies of negotiation are assumed to be immaterial—but Alcoa has the burden of proof on damages, and this is the fairest estimate on the materials submitted.

It will also be assumed that the $1.06 per pound price represented the fair market value of unprocessed scrap for February and March of 2002. Though no evidence has been submitted that the fair market value was the same in April as it was in either of those two months—indeed, such was the point of the fair market value instruction in the Memorandum–Decision and Order—no evidence has been submitted by Alcoa or Utica Alloys that it was not. Accordingly, on the submissions presented, the fair market value of unprocessed scrap in February and March is $1.06 per pound.

### D. Deductions

■ Alcoa agrees that under the purchase agreement, it is required to pay the $19,450 in freight charges Utica Alloys incurred with respect to the received scrap. It argues, however, that it is entitled to recover $6,500 in freight charges it incurred in retrieving the unpaid for scrap from Utica Alloys' facility. Utica Alloys argues not that the figure given is inaccurate, but rather that no such recovery is permissible, because the retrieved scrap "could have been sold [by Alcoa] from [Utica] Alloys['] place of business, thereby eliminating the need to incur the freight charge[s]." (Docket No. 34, ¶ 7.) Utica

Alloys' argument is rejected. The reason Alcoa had to retrieve the scrap in the first place was because Utica Alloys refused to abide by the contract to which it agreed and pay for the scrap. Utica Alloys will not now be heard to dictate the terms of other contracts Alcoa had to enter into because of Utica Alloys' breach. In the absence of the breach, no freight charges would have been incurred by Alcoa. The $6,500 will therefore be added to the total damages.

■ Utica Alloys also argues that 1,700 pounds of scrap it received on March 15, 2002, should not be included in the amount of scrap shipped and received in March of 2002, because said pounds of scrap consisted of excess oil and moisture and was therefore non-conforming. (Docket No. 34, ¶ 5.) Particularly, Alcoa's spreadsheet analysis of all the scrap shipped and received reveals that, on March 15, 2002, 27,760 pounds of scrap turnings were shipped, but 29,460 pounds were received. (Docket No. 33, Ex. A.) Utica Alloys contends that "the Tonnage to which the Contract Price is applicable was the received weight," despite nothing in the purchase agreement directly indicating this to be the case. Utica Alloys does submit arguable evidence that the received weight is the operative figure for calculating the purchase agreement price in some of its several "exhibits" attached to its opposition to the damages application.[2] Even assuming as true that such exhibits do demonstrate a course of conduct between the parties, Utica Alloys has submitted no documentation that the increase in weight in this case is due to excess oil and moisture, and, more importantly, that it protested such increase before it processed the scrap, which appears to be required

2. In this regard, it is noted that Utica Alloys electronically filed its opposition to the damages application, but failed to adequately identify its exhibits, instead lumping 28 pages worth of unnumbered and unlettered "exhibits" into one document.

under the purchase agreement. *See* Docket No. 34, Purchase Agreement (attached) (stating that "[a]ll weight claims will be addressed before processing"). With no citation other than the spreadsheet on which the received weight appears,[3] there is not enough evidence to conclude that the 1,700 pounds should be deducted from the scrap shipped and received in March of 2002.

### E. Damages Calculation

The following graph illustrates the calculation of Alcoa's damages for the unpaid for scrap it shipped and Utica Alloys received in February, March, and April of 2002:

**(A) FEBRUARY 2002**

(1) *Scrap Turnings*

| | | |
|---|---|---|
| –shipped and received: | | 147,797 pounds |
| –purchase agreement price: | x | $ 1.538/pound |
| –Money due under agreement: | | $227,311.786 |
| –Less fair market value (147,797 pounds × $1.06/lb) | | ($156,664.820) |
| Total: | | $ 70,646.966 |

(2) *Scrap Solids*

| | | |
|---|---|---|
| –shipped and received: | | 7,019 pounds |
| –purchase agreement price: | | $ 1.688/pound |
| –Money due under agreement: | | $ 11,848.072 |
| –Less fair market value (7,019 pounds × $1.06/lb) | | ($ 7,440.140) |
| Total: | | $ 4,407.932 |

(3) *February Total*

| | | |
|---|---|---|
| –scrap turnings total: | | $70,646.966 |
| –scrap solids total: | + | $ 4,407.932 |
| FEBRUARY DAMAGES: | | $75,054.898 |

**(B) MARCH 2002**

*Scrap Turnings*

| | | |
|---|---|---|
| –shipped and received: | | 68,705 pounds |
| –purchase agreement price: | x | $ 1.535/pound |
| –Money due under agreement: | | $105,462.175 |
| –Less fair market value (68,705 pounds × $1.06/lb) | | ($ 72,827.300) |
| MARCH DAMAGES: | | $ 32,634.875 |

**(C) APRIL 2002**

*Scrap Turnings*

---

3. For this particular argument (that 1,700 pounds should be deducted), Utica Alloys cites only the spreadsheet attached as Exhibit A to Alcoa's damages application. Such spreadsheet makes the court none the wiser, however, as to the validity of the argument.

|  |  |  |
|---|---|---|
| –shipped and received: |  | 211,041 pounds |
| –purchase agreement price: | x | $1.630/pound |

|  |  |
|---|---|
| –Money due under agreement: | $ 343,996.83 |
| –Less fair market value (211,041 pounds × $1.06/lb) | ($223,703.46) |

|  |  |
|---|---|
| APRIL DAMAGES: | $120,293.37 |

**(D) TOTAL DAMAGES**

|  |  |
|---|---|
| February Damages: | $ 75,054.898 |
| March Damages: | $ 32,634.875 |
| April Damages: | $120,293.37 |

|  |  |  |
|---|---|---|
| TOTAL: |  | $227,983.143 |
| –Alcoa freight charges: | + | $ 6,500.00 |

|  |  |
|---|---|
| TOTAL: | $234,483.143 |
| Less Utica Alloys' freight charges: | ($ 19,450) |

|  |  |
|---|---|
| TOTAL DAMAGES: | $215,033.14 |

## IV. CONCLUSION

Accordingly, it is

ORDERED that defendant Alcoa Inc's verified application for damages is GRANTED in the amount of $215,033.14.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.